IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| VIRGINIA TRANSFORMER CORP., | ) | |
| | ) | |
| Plaintiff/Counter-defendant | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18-cv-00143 |
| | ) | |
| ALEXANDER EBBERT, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Virginia Transformer Corp. (VTC) asserts claims against one of its former salespeople, defendant Alexander Ebbert. VTC filed suit in state court, asserting a breach of contract claim. Ebbert filed a counterclaim that included federal claims (a race discrimination and retaliation claim under 42 U.S.C. § 1981) and a breach of contract claim; he then removed the case to this court. He later amended,[1] and it is his first amended counterclaim (Dkt. No. 13) that is the operative counterclaim.

Pending before the court are two motions, which were fully briefed and were argued before the court. The first is VTC's motion to dismiss the first amended counterclaim in its entirety, which asserts several different grounds for dismissal. (Dkt. No. 16.) The second is Ebbert's motion for leave to file a second amended counterclaim. (Dkt. No. 23.) In it, Ebbert seeks leave to amend his counterclaim to add what the parties refer to collectively as the "Title VII Counterclaims." The eight proposed Title VII Counterclaims consist of a discrimination claim and a separate retaliation claim on four separate grounds: race (Caucasian), religion

---

[1] Ebbert's original counterclaim contained two additional counts (VI and VII; there was no count IV), and VTC also moved to dismiss them. Ebbert sought and received leave from the court to file an amended counterclaim omitting those counts and amending the first three counts, rendering moot VTC's prior motion as it related to those counts.

(Jewish), national origin (American), and sex (gay).[2] VTC opposes allowing amendment (Dkt. No. 24) and argues that amendment would be futile.

In response to the futility arguments and at the hearing, Ebbert requested that, if the court were to deny the motion for leave to amend, he be permitted to file a new amended counterclaim (which has not yet been provided to the court).

The court has considered the arguments of the parties and their briefing, and sets forth its rulings below.

## I. STANDARDS OF REVIEW

With regard to Ebbert's motion to amend, Federal Rule of Civil Procedure 15(a) directs that leave to amend a complaint "shall be freely given when justice so requires." The court should only deny leave to amend a pleading "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Here, VTC contends that amendment would be futile, arguing that none of the claims in the proposed second amended counterclaim could survive a Rule 12(b)(6) motion to dismiss.[3] To survive such a motion, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the

---

[2] In light of the court's rulings herein, the court does not reach the issue of whether Title VII prohibits discrimination on the basis of sexual orientation.

[3] VTC's challenge based on Ebbert's alleged failure to exhaust is properly evaluated under Rule 12(b)(6) and not under 12(b)(1) because the 180-day period is a procedural requirement to filing suit and not a jurisdictional bar. *Stewart v. Iancu*, 912 F.3d 693, 701–02 (4th Cir. 2019).

'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether Ebbert has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in [Ebbert's] favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## II.  DISCUSSION

### A. Exhaustion of Title VII Counterclaims

With regard to the Title VII Counterclaims, VTC opposes the motion to amend to add those claims on the grounds that amendment is futile. In addition to arguing that each claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, VTC also contends that those claims cannot be considered by this court because—despite the EEOC's issuance of a right-to-sue letter—the right-to-sue letter was issued less than 180 days after Ebbert filed his charge of discrimination. Specifically, he filed his charge "in January 2018," (Dkt. No. 13 at 1 n.1), and the EEOC issued its notice of right-to-sue on July 17, 2018. The parties have not identified the exact date that he filed his charge, but because the notice itself indicates that less than 180 days have passed, he presumably filed his charge after January 17, 2018. VTC argues that, because the EEOC did not retain authority over his underlying charges for the statutory period of 180

3

days, as set forth in 42 U.S.C. § 2000e-5(f)(1), those claims have not been administratively exhausted and must be dismissed.

As the court noted in its recent opinion in *Hardy v Lewis Gale Medical Center*, 7:18-cv-218, ECF No. 49, at 11–19 (Mar. 19, 2019 Amended Mem. Op. & Order), *as amended* (Mar. 27, 2019), which addressed this same issue, there is a split of authority as to whether courts can consider claims in a case where the EEOC issued its right-to-sue notice prior to the expiration of the 180-day statutory period EEOC has to resolve the claims. *Id.* at 12. In large part, the issue turns on whether or not the EEOC's regulation on this issue, 29 C.F.R. § 1601.28(a)(2), which purports to give authority to the EEOC to issue early right-to-sue notices, is a valid exercise of EEOC's rule-making authority.

In *Hardy*, this court concluded that EEOC's regulation was not entitled to deference and could not alter the statutory scheme, and thus that EEOC was not permitted to issue right-to-sue notices earlier than 180 days. The court incorporates its reasoning in *Hardy* and reaches the same result here. Accordingly, because Ebbert received his right-to-sue notice less than 180 days after filing his charge, that notice is ineffective to constitute a complete exhaustion of administrative remedies. Thus, those claims are not properly before the court and granting leave to amend to add them would be futile.

Generally, as in *Hardy*, the court simply would remand those claims to the EEOC. *Id.* at 18–19; *see also Taylor v. Cardiology Clinic, Inc.*, No. 4:14-CV-00046, 2015 WL 770439, at *4 (W.D. Va. Feb. 24, 2015) (remanding claims to EEOC so that it could "attempt to resolve Plaintiff's complaints for the 180 days mandated by statute"). But an additional wrinkle exists in this case—here the claims have not yet been added to the case because leave to amend to add them has not been given. But failing to remand them would leave those claims in a sort of legal

4

limbo, where this court will not hear them, but they are not pending before the EEOC, either. Accordingly, the court will grant Ebbert technical leave to amend and add his Title VII Counterclaims, but they will be dismissed from this action pursuant to Rule 12(b)(6) and remanded to the EEOC for proper resolution as required by statute.

**B. Section 1981 Counterclaims and Breach of Contract Claim**

In light of the court's ruling on the Title VII Counterclaims, the court is left with only the three claims originally set forth in Ebbert's first amended counterclaim, although the court reviews them in their form in the proposed second amended counterclaim. They are: (1) a claim pursuant to Section 1981 in which Ebbert alleges that he was terminated based on his race, Caucasian, (2) a Section 1981 retaliation claim, and (3) a breach of contract claim. VTC filed a motion to dismiss the first amended counterclaim, and, in opposing the motion for leave to file the second amended counterclaim, again addressed the proposed amended claims. VTC contends that all three claims are subject to dismissal.

As to the wrongful termination claim, the court agrees, and so it will grant the motion to dismiss but without prejudice to Ebbert's ability to file another proposed amended counterclaim that attempts to rectify the deficiencies identified by the court. The court concludes, however, that the proposed second amended counterclaim sufficiently states a retaliation claim and that the breach of contract claim is not subject to dismissal. So, it will deny the motion to dismiss those two claims.

**1. Section 1981 Wrongful Termination Claim**

The court agrees with VTC's assertion that Ebbert's Section 1981 discrimination claim lacks sufficient factual allegations to state a claim. To establish this claim, Ebbert must show that: "(1) he is a member of a protected class; (2) he was qualified for his job and his job

performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). As Ebbert correctly notes, the fourth element of the claim is flexible "depending on the factual situation and the claim alleged." *Ennis v. Nat'l Assoc. of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 2008).

Ebbert has pled sufficient facts to support the first three elements of a prima facie case for discriminatory discharge. Discrimination can occur against any racial group, and so he has alleged the first element. *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) ("With respect to Section 1981, we have explained that the provision was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."). (quoting *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 295–96 (1976)). As to the second and third elements, he specifically alleges that he was performing his work at a satisfactory level and meeting legitimate expectations of his employer but that he was subjected to "pretextually false employment goals," and so any reasons cited for his termination were pretextual. (Proposed Second Am. Counterclaim ¶¶ 13–14, 16, 44–45.) That, too, is sufficient for those two elements.

Ebbert fails to set forth allegations, however, sufficient to plead the fourth element of his case. He does not allege that he was replaced by someone outside the protected class or that another person with a similar disciplinary record outside the protected class was not terminated. Instead, it appears that Ebbert is relying solely on "pattern and practice" type evidence to raise a reasonable inference of discrimination in his termination. But his assertion that his termination was discriminatory relies on extremely limited facts, none of which are alleged to apply to

Ebbert, and all of which are based "upon information and belief." Specifically, he alleges the following in his second amended counterclaim:

> 18. Upon information and belief, VTC has engaged in a pattern and practice of discrimination by hiring employees of Caucasian descent and American national origin, and shortly thereafter, terminating their employment for no legitimate cause.
>
> 19. Upon information and belief, a large majority of all VTC employees are Asian individuals of Asian national origin. Upon information and belief, VTC hired few Caucasian employees and/or terminated their employment shortly after hire based solely upon their race and/or national origin.
>
> 20. Upon information and belief, VTC utilizes a practice of hiring employees of non-Asian descent and American national origin so that VTC employees can learn from that new employee's skill set and business contacts lists before terminating that employee under false pretenses. The knowledge and skills are then disseminated to the Asian workforce.

(Proposed Second Am. Counterclaim ¶¶ 18–20.)

These allegations are insufficient to support a plausible inference that Ebbert was discriminated against based on his race. First of all, all of the allegations described above are based on "information and belief," which—especially given the absence of specific facts to support them—"veer away from supporting plausible inferences" and do not show a "plausible" claim for relief. *See Carter v. Va. Dep't of Game & Inland Fisheries*, 2018 WL 3614975, *9 (E.D. Va. July 27, 2018). Additionally, as VTC notes, Ebbert does not allege that *he* was hired for his skill set and business contacts lists.

Furthermore, although the second amended counterclaim accuses Ebbert's supervisors (again, "upon information and belief") of "maintain[ing] a discriminatory animus against Caucasian" men, (Second Am. Counterclaim ¶ 21), that is a conclusory statement without any supporting facts as to race. Notably, in terms of concrete examples of such animus, though, Ebbert only offers facts related to his need for certain religious observances. (*Id.* ¶¶ 23–25.) He

7

offers no specific facts to support an allegation of animus based on race or national origin. Accordingly, the court will grant VTC's motion to dismiss the wrongful termination claim under Section 1981.

The court will dismiss this claim without prejudice, though. At the hearing before the court, Ebbert's counsel claimed that he could provide additional factual support for Ebbert's claims. In view of the "liberal" amendment permitted by the Federal Rules of Civil Procedure, the court cannot say that amendment would be futile, particularly without having seen the proposed amendments and in light of Ebbert's counsel's representation. Accordingly, the court will allow Ebbert to file a third amended counterclaim not later than 21 days after entry of this order. Before asserting any claim, of course, counsel should ensure that it has an adequate basis in fact and law as required under Rule 11.

**2. Section 1981 Retaliation Claim**

In order to state a *prima facie* case of retaliation under 42 U.S.C. § 1981, Ebbert must plead facts to show that (1) he engaged in protected activity; (2) VTC took adverse action against him; and (3) a causal relationship existed between the protected activity and the adverse action. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016).

First of all, insofar as Ebbert claims his termination was the retaliatory act, VTC asserts that Ebbert has failed to show he engaged in protected activity. In his initial response Ebbert points to paragraphs 22, 23, 26, 29, 32, 52, and 53 of the first amended counterclaim. The court has reviewed those paragraphs, and they appear to be largely unchanged in the proposed second amended counterclaim. While some of them refer to him complaining about having to work on his day of religious observance, it is not clear that those complaints raised discrimination. The only more specific allegation is the vague allegation that he "engaged in the protected activity of

complaining about . . ." a "discriminatory" work environment. (Second Am. Counterclaim ¶ 53.) But that does not identify with sufficient particularity what the protected activity was or when it was. Thus, insofar as Ebbert is claiming that his termination is the retaliatory action, the court does not find his claim to be sufficiently pled.

In the second amended counterclaim, however, Ebbert includes the facts that he filed an EEOC charge in January 2018 and that the lawsuit filed by VTC a mere two months later was an act of retaliation. (Second Am. Counterclaim ¶¶ 8, 35.) Clearly, the filing of a charge of discrimination is protected activity, 42 U.S.C. § 2000e-3(a), and the filing of a lawsuit can constitute an "adverse action" sufficient to support a retaliation claim, at least in some circumstances. *See, e.g.*, *Sowards v. Toyota Motor Man.*, Civil Action No. 3:15-13029, 2016 WL 3211441, at *4–*7 (S.D.W.Va. June 9, 2016) (collecting authority for the proposition that litigation conduct and the filing of a lawsuit can constitute retaliatory acts under Title VII, the FMLA, and other federal statutes and holding that an employer's repeated threats to file a malicious prosecution lawsuit against an FMLA plaintiff can constitute retaliation). Lastly, the temporal proximity between the two events, alone, is sufficient at this stage of the case to satisfy Ebbert's pleading burden. Thus, the court will grant the motion to amend insofar as Ebbert seeks to amend his Section 1981 retaliation claim and will deny the motion to dismiss the same.

### 3. Breach of Contract Claim

As to the breach of contract claim, VTC's sole argument for dismissal is dependent on the court's dismissal of the federal claims. VTC contends that the breach of contract claim does not provide an independent basis for this court's jurisdiction because the amount in controversy is less than $75,000.[4] 28 U.S.C. § 1332 (setting forth requirements for district court's exercise of

---

[4] Ebbert counters that the amount in controversy satisfies the jurisdictional limit.

9

diversity jurisdiction, which includes an amount in controversy that "exceeds the sum or value of $75,000").

As discussed above, one of Ebbert's federal claims is going forward. Thus, the court clearly has supplemental jurisdiction over Ebbert's breach of contract claim. *See* 28 U.S.C. § 1367. The motion to dismiss that claim will be denied.

## III. CONCLUSION

The court will enter an appropriate order setting forth the rulings as discussed in this opinion.

Entered: March 28, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge